

FILED
DEC 04 2018
Clerk, U.S District Court
District Of Montana
Missoula

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MALCOLM WAYNE BIRDSONG;<br>M.W. BIRDSONG; WAYNES'<br>GROUP; MISSOULA COUNTY; and<br>ENOCH INVESTMENTS, LLC,<br><br>Defendants. | CV 17–72–M–DWM<br><br><br>OPINION & ORDER |

## INTRODUCTION

The United States sued Malcolm Birdsong to reduce an alleged $438,146.94 in unpaid taxes and statutory accruals to judgment, to determine that Birdsong owns two properties in Lolo, Montana, and to foreclose the federal tax liens on those properties. The parties filed cross-motions for summary judgment. (Doc. 27; Doc. 29.) Birdsong argues that the action is barred because the United States failed to send the notice of deficiency in the form required by law. He has moved under Federal Rule of Civil Procedure 37(c) to exclude evidence that the notice of deficiency was sent by certified mail. (Doc. 35.) The United States argues that it

1

is entitled to judgment as a matter of law because there are no genuine issues of material fact. A hearing was held on December 3, 2018. Birdsong's motion to exclude evidence and his motion for summary judgment are denied; the United States' motion for summary judgment is granted.

## STATEMENT OF FACTS[1]

Malcolm Birdsong, also known as M. W. Birdsong, failed to file federal income tax returns from 2003 to 2008, resulting in a $438,146.94 tax assessment against him. Under 26 U.S.C. § 6321, the tax assessment automatically gave rise to a tax lien on Birdsong's real and personal property. On May 23, 2017, the United States sued to reduce the tax assessment to judgment and to enforce the tax lien against two properties in Lolo, Montana, legally described as:

> Subdiv.-LAV LAKE VIEW ADD Lot-001, Block-00A 12N 20W 26 LAKE VIEW-PARCEL A LOT 1 BLK A, SUID #2050301

and

> Subdiv.-LAV LAKE VIEW ADD Lot-002 Block-00A 12N 20W 26 LAKE VIEW ADD, LKVW LOT 2 OF LAKE VIEW ADD, LKVW LOT 2 OF LAKE VIEW ADDITION BLK A 26-12-20, SUID #1026859.

Because Missoula County claims an interest in these properties for unpaid property taxes, it has been named a party, along with its assignee Enoch Investments, LLC.

---

[1] Unless otherwise noted, these are undisputed facts from the United States' Statement of Undisputed Facts (Doc. 27-2) and Birdsong's response (Doc. 39).

2

*See* 26 U.S.C. § 7403(b). Missoula County, Enoch Investments, and the United States have stipulated to the priority of their respective interests in the properties. (Doc. 10; Doc. 26.)

Birdsong conveyed his interest in the properties to Defendant Waynes' Group through a quitclaim deed on September 4, 2004. Waynes' Group was incorporated in Nevada in 2005 as an unincorporated Religious Scriptural Society. Birdsong is the sole officer, manager, and owner of Waynes' Group. The United States seeks to have Birdsong's conveyance to Waynes' Group set aside as fraudulent. Alternatively, the United States seeks a determination that Waynes' Group holds title to the properties as either Birdsong's nominee or alter ego, such that Birdsong is the true owner.

For his part, Birdsong argues that this suit is barred because the United States cannot establish that it properly sent the notice of deficiency under 26 U.S.C. § 6212, which is a prerequisite to a valid tax assessment. Section 6212 requires notices of deficiency to be sent by certified or registered mail or, if sent by other means, that they are actually received by the taxpayer.

Discovery has been a challenge, particularly regarding the notice of deficiency. Birdsong invoked his Fifth Amendment privilege against self-incrimination in response to the United States' discovery requests and to many substantive deposition questions. On August 24, 2018, one week after discovery

3

closed, Birdsong filed a motion for summary judgment and a declaration. In the declaration, Birdsong claimed that he unnecessarily invoked the Fifth Amendment in response to deposition questions about whether he recognized and received the notice of deficiency. For those questions, Birdsong retracted his Fifth Amendment invocation and amended his answers to state "I do not recognize [the notice of deficiency] and do not believe I ever received [it]." (Doc. 31-4 at 3–4.)

On July 31, 2018, the United States produced copies of the envelope in which the notice of deficiency was mailed with the Bates numbers USAPROD2-001263 to USAPROD2-001264. (Doc. 32-3 at 22–23.) The United States claims that the envelope showed part of a certified mail label. Birdsong denies that any of the documents produced on July 31, 2018, included a certified mail envelope.

On August 24, 2018, one week after discovery closed, the United States filed a motion for summary judgment with an attached Declaration of Jennifer Graham, a technical services advisor with the Internal Revenue Service. Graham's declaration states that the notice of deficiency was sent to Birdsong by certified mail. On August 30, 2018, 13 days after discovery closed and six days after the parties filed cross-motions for summary judgment, the United States produced a supplemental response with copies of the envelope that clearly showed a certified mail label with the Bates numbers USAPROD3-000050–51. (Doc. 32-2 at 6–7.)

4

The United States claimed that the copy produced on July 31, 2018, was incomplete due to an internal scanning error. (Doc. 44-1 at 11.)

Based on the August 30 disclosure, Birdsong requested, and was granted, an extension to file his response to the United States' motion for summary judgment. (Doc. 33; Doc. 34.) In the meantime, Birdsong was able to view the original envelopes. (Doc. 44 at 7–8.) He then filed a motion to exclude evidence that the notice of deficiency was sent by certified mail, including the envelopes produced in the supplemental disclosure and Jennifer Graham's declaration.

## LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the initial burden to show the absence of any genuine dispute of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). The burden then shifts to the nonmoving party to produce specific facts that show a material issue remains to be tried. *Id.* at 1103. The court must view all evidence and draw all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ANALYSIS

### I. Evidentiary Issues

There are two evidentiary issues to consider before reaching the merits of the cross-motions for summary judgment: (1) Birdsong's motion to exclude evidence that the notice of deficiency was sent by certified mail and (2) Birdsong's invocation and partial retraction of the Fifth Amendment privilege against self-incrimination.

#### A. Birdsong's Motion to Exclude Evidence

Federal Rule of Civil Procedure 26(e) requires parties to supplement or correct disclosures and non-deposition discovery responses "in a timely manner" upon "learn[ing] that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Under Rule 37(c), a party that fails to comply with Rule 26(e) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The non-compliant party has the burden to show that its failure to disclose was substantially justified or harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

The August 30 production is a supplemental disclosure under Rule 26(e). The parties dispute whether the supplemental disclosure occurred "in a timely manner" as required by Rule 26(e), but it does not matter here. Even if the August 30 supplemental disclosure was not timely, the United States has met its burden to show the disclosure was harmless under Rule 37(c). First, that the August 30 production merely provided better copies of previously disclosed documents limits the surprise to Birdsong resulting from the supplemental disclosure. That the initial July 31 production arguably shows a portion of a certified mail label also weighs in the United States' favor. Further, Jennifer Graham's declaration that the notice of deficiency was sent to Birdsong by certified mail suggests that there is at least a dispute over the tax assessments' validity, which also limits the surprise to Birdsong from the supplemental disclosure. Finally, the supplemental disclosure occurred less than two weeks after discovery closed, minimizing the disruption to the trial schedule and leaving Birdsong time to develop an alternative trial strategy.

Birdsong's reliance on *Melczer v. Unum Life Insurance Co. of America*, 259 F.R.D. 433 (D. Ariz. 2009), and *McClure v. Country Life Insurance Co.*, 2017 WL 3719880 (D. Ariz. Aug. 29, 2017), is unavailing. *Melczer* involved the withholding of 526 pages of documents until almost four months after discovery ended and almost 10 months after the non-disclosing party came into possession of the documents. 259 F.R.D. at 434. *McClure* involved the withholding of

7

important medical records until eight days before trial. 2017 WL 3719880 at *2. This case involves the supplemental disclosure of one envelope just one month after the original disclosure and less than two weeks after discovery closed. The harm here, if any, does not compare to that in *Melczer* and *McClure*, where parties received previously undisclosed documents months after discovery and on the eve of trial. That the nondisclosure in *McClure* resulted from an alleged "copying error" does not make the case any more germane—the relevant comparison is the harm caused by the nondisclosure, not the reason for that nondisclosure. Finally, Birdsong's reliance on *Wong v. Regents of University of California*, 410 F.3d 1052 (9th Cir. 2005), is inapposite because *Wong* dealt with initial expert disclosures, not supplemental documentary disclosures.

Birdsong's argument focuses on the August 30 production of the envelopes, but he has moved to exclude *all* evidence that the notice of deficiency was sent by certified mail, including Jennifer Graham's declaration filed with the United States' motion for summary judgment. Birdsong has not argued that Graham's declaration violates Rules 26(a) or 26(e) or that it should be excluded for any other reason. Further, the United States has filed a second declaration by Graham with its response to Birdsong's motion for summary judgment. Birdsong has made no argument with respect to that declaration. Accordingly, Birdsong's motion to exclude is denied as to both the August 30 production and Graham's declarations.

8

## B. Birdsong's Fifth Amendment Invocation and Retraction

A district court has discretion to draw an adverse inference from a party's assertion of the Fifth Amendment privilege against self-incrimination in a civil case. *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 909 (9th Cir. 2008). In doing so, it must balance the party's Fifth Amendment rights against the opposing party's need for the privileged information. *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000). Accordingly, an adverse inference may not be drawn "unless there is a substantial need for the information and there is not another less burdensome way of obtaining that information." *Id.* "Moreover, the inference may be drawn only when there is independent evidence of the fact about which the party refuses to testify." *Nationwide Life Ins. Co.*, 541 F.3d at 912. Finally, because the Fifth Amendment privilege can only be invoked question-by-question, adverse inferences must also be drawn question-by-question. *See Glanzer*, 232 F.3d at 1265–66.

Here, Birdsong has repeatedly invoked the Fifth Amendment, including to 200 deposition questions and to all requests for admission, requests for document production, and interrogatories. Not drawing an adverse inference would effectively foreclose the United States from maintaining this action. Therefore, there is a substantial need for the information and, given Birdsong's unwillingness to cooperate in discovery, there is no less burdensome way to obtain it than to

9

allow an adverse inference. The United States is therefore allowed to rely on adverse inferences where independent evidence supports the inference.

The parties agreed at oral argument that Birdsong's retraction of the Fifth Amendment privilege about having received the notice of deficiency is only relevant if Birdsong's motion to exclude is granted. Because Birdsong's motion to exclude is denied, there is no need to address Birdsong's retraction.

## II. Birdsong's Motion for Summary Judgment

Birdsong seeks summary judgment on the ground that this action is barred because the notice of deficiency was not sent pursuant to 26 U.S.C. § 6212. A valid notice of deficiency is required before a tax assessment can be made against a taxpayer. 26 U.S.C. §§ 6212, 6213. The government has the burden to prove that proper notice was sent. *Welch v. United States*, 678 F.3d 1371, 1376 (Fed. Cir. 2012). Section 6212(a) provides that the Secretary of the Treasury "is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail." Section 6212(b) provides that a notice of deficiency "mailed to the taxpayer at his last known address, shall be sufficient." 26 U.S.C. § 6212(b)(1). The statute does not require a notice of deficiency to be sent by certified mail. Rather, it permits the government to fulfill the notice requirement either by sending it certified or registered mail to the taxpayer's last known address or by providing the

10

taxpayer actual notice by some other means. *Welch*, 678 F.3d at 1376; *Cohen v. United States*, 297 F.2d 760, 772 (9th Cir. 1962).

Here, the parties agree that Birdsong's motion to exclude is dispositive of his motion for summary judgment. Because the motion to exclude is denied, the copy of the certified mail envelope produced on August 30 is permitted and there is no dispute that the United States sent proper notice under § 6212.[2] Accordingly, Birdsong's motion for summary judgment is denied.

### III. United States' Motion for Summary Judgment

The United States moved for summary judgment on the ground that there is no genuine dispute of material fact (1) that the tax assessment against Birdsong is valid and should be reduced to judgment, (2) that Birdsong is the true owner of the two properties in Lolo, and (3) that the tax lien against Birdsong's property should be enforced. Birdsong's response brief is just over two pages and argues only that the Court should grant his motion for summary judgment. Because "the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them," the facts identified with respect to Birdsong's motion for summary judgment are

---

[2] The certified mail envelope was sent to Birdsong's post office box. The envelope has a stamp indicating that it was "unclaimed." Though the government need only prove the notice was sent by certified mail and not that it was delivered, at oral argument, counsel for both parties represented that the "unclaimed" stamp means the envelope was properly delivered but never collected by Birdsong.

11

relevant here. *See Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001).

### A. Tax Assessment

The United States argues that as a matter of law the tax assessments against Birdsong should be reduced to judgment. Birdsong has not established a genuine dispute of material fact as to the tax assessments. The government has the burden of proof in a suit to collect taxes. *Palmer v. Internal Revenue Serv.*, 116 F.3d 1309, 1312 (9th Cir. 1997). Its "assessments for unpaid taxes are normally entitled to a presumption of correctness so long as they are supported by a minimal factual foundation." *Id.* Certificates of Assessments and Payments on Form 4340 are "probative evidence in and of themselves and, in the absence of contrary evidence, are sufficient to establish that . . . assessments were properly made." *Koff v. United States*, 3 F.3d 1297, 1298 (9th Cir. 1993) (per curiam) (quoting *Hughes v. United States*, 953 F.2d 531, 540 (9th Cir. 1992)) (alteration in original). Once the government introduces a Certificate of Assessment, the burden shifts to the taxpayer to show that the assessment is incorrect. *See Koff*, 3 F.3d at 1298; *Palmer*, 116 F.3d at 1312.

Here, the United States has produced the Certificates of Assessment on Form 4340 made against Birdsong for the taxable years 2003 to 2008. The assessments are based on data reported to the Internal Revenue Service by third

12

parties and analysis of Birdsong's bank deposit history, which provide the requisite "minimal factual foundation." *See Palmer*, 116 F.3d at 1312. Birdsong has not produced any evidence to contradict the assessments. Rather, he claims that whether he has unpaid tax liability is disputed because he invoked the Fifth Amendment on the issue.

Birdsong invoked the Fifth Amendment in response to questions about whether he had filed tax returns for the taxable years 2003 to 2008, whether he had received extensions to file his tax returns for those years, and whether he had paid his income taxes for those years. The permissible adverse inferences are that he did not file tax returns, did not have an extension to file tax returns, and did not pay his income taxes for those years. The tax assessments themselves provide the independent evidence to support these adverse inferences. Viewed in the light most favorable to Birdsong, this is insufficient to rebut the presumptive correctness of the assessments. Accordingly, there are no genuine issues of material fact as to the assessments or Mr. Birdsong's tax liability.

### B.  Ownership of the Properties

The United States argues that Birdsong is the true owner of the two properties in Lolo as a matter of law because Waynes' Group holds the title as either Birdsong's nominee or alter ego, or because the transfer to Waynes' Group should be set aside as a fraudulent conveyance. The United States need only

13

establish one of these claims to show that Birdsong has an interest in the properties. State law determines whether a taxpayer has an interest in property. *Drye v. United States*, 528 U.S. 49, 58 (1999). Federal law then determines the consequences of ownership, such as whether a tax lien can be applied to that property. *Id.* Here, the question is whether Birdsong has an interest in the properties under Montana law.

A nominee is a party who "holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." *Turk v. Internal Revenue Serv.*, 127 F. Supp. 2d 1165, 1167 (D. Mont. 2000). "[A] nominee is essentially a proxy, or even a decoy, for someone else." *Id.* Montana courts have not articulated a test for nominee status. In *Towe Antique Ford Foundation v. Internal Revenue Service*, 791 F.Supp 1450 (D. Mont. 1992), this Court set forth the following factors to consider:

- (a) No consideration or inadequate consideration paid by the nominee;
- (b) Property placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property;
- (c) Close relationship between transferor and the nominee;
- (d) Failure to record conveyance;
- (e) Retention of possession by the transferor; and
- (f) Continued enjoyment by the transferor of benefits of the transferred property.

*Id.* at 1454.

14

The following facts are undisputed here. Birdsong received only $100 from Waynes' Group in exchange for each property. Birdsong has always been Waynes' Group's only officer, manager, and owner, and was the only signatory on Waynes' Group's bank account. Further, Birdsong continued to operate his dental practice on the properties and pay the property taxes after the transfer to Waynes' Group. He also made the decision to redeem several outstanding property tax liabilities on the properties. Finally, though he invoked the Fifth Amendment with respect to the question at his deposition, Birdsong now does not dispute that he maintained control of the properties after the transfer.

In addition, Birdsong testified that he paid the utility bills for the properties, then invoked the Fifth Amendment when asked the same question again. He initially testified that he paid rent to Waynes' Group, then testified that he did not remember paying rent to Waynes' Group, then invoked the Fifth Amendment with respect to the issue. Birdsong invoked the Fifth Amendment when asked if he was the owner of the properties for "all intents and purposes." He later testified that he was under the impression that he and Waynes' Group owned the property. Birdsong invoked the Fifth Amendment when asked if he makes decisions about the use of the properties, such as to whom to rent. He also invoked the Fifth Amendment when asked if he has current rental agreements on the properties and who collects the rent. The permissible adverse inferences, then, are that Birdsong

15

considers himself the owner of the properties, decides to whom to rent, and currently has tenants who pay rent to him. These inferences are supported by the undisputed facts that Birdsong retains control of the properties and the tax assessments showing that Birdsong has income.

When viewed in the light most favorable to Birdsong, these facts establish that Waynes' Group paid inadequate consideration for the properties, Waynes' Group and Birdsong have a close relationship, Birdsong maintained possession of the properties after the transfer, and Birdsong enjoyed the benefits of the properties, such as collecting rents, after the transfer. Accordingly, the United States is entitled to summary judgment that Waynes' Group was Birdsong's nominee and there is no need to reach the alter ego or fraudulent conveyance theories.

### C.  Tax Liens

Under 26 U.S.C. § 6321, if a taxpayer refuses to pay a tax after a valid assessment and demand for payment, then a tax lien automatically arises "upon all property and rights to property" of a taxpayer. The requirements of a valid assessment are discussed above. The demand for payment must be made within 60 days of the assessment and provide notice to the taxpayer of the amount of the assessment. 26 U.S.C. § 6303(a). There are no formal requirements for the demand for payment. *Hughes*, 953 F.2d at 536.

The tax lien statute "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *Drye*, 528 U.S. at 56 (citation omitted). This includes "property that is held by a third party as the taxpayer's nominee or alter ego." *See Fourth Inv., LP v. United States*, 720 F.3d 1058, 1066 (9th Cir. 2013). The United States can perfect the lien against purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors by filing the required notices under state law. 26 U.S.C. § 6323(f). It can enforce the lien in district court. 26 U.S.C. § 7403.

Here, as discussed above, the United States' made valid tax assessments against Birdsong as a matter of law. Jennifer Graham's declaration establishes, and Birdsong does not dispute, that the United States made timely demand for payment. Accordingly, the United States is entitled to summary judgment to enforce its tax liens.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Birdsong's Motion to Exclude Evidence (Doc. 35) and Motion for Summary Judgment (Doc. 29) are DENIED. The United States' Motion for Summary Judgment (Doc. 27) is GRANTED as follows:

A. Judgment is entered in favor of the United States and against Defendant Malcolm Wayne Birdsong, also known as M.W. Birdsong, for the

17

outstanding federal income taxes for the 2003 to 2008 tax years, in the amount of $438,146.94, as of August 31, 2018, plus interest continuing to accrue until paid pursuant to 26 U.S.C. §§ 6601 and 6621 and 28 U.S.C. § 1961(c).

B.     Waynes' Group holds an interest in the properties ("Subject Properties") as Birdsong's nominee. The Subject Properties are legally described as:

> Subdiv.-LAV LAKE VIEW ADD Lot-001, Block-00A 12N 20W
> 26 LAKE VIEW-PARCEL A LOT 1 BLK A, SUID #2050301

and

> Subdiv.-LAV LAKE VIEW ADD Lot-002 Block-00A 12N 20W 26 LAKE VIEW ADD, LKVW LOT 2 OF LAKE VIEW ADD, LKVW LOT 2 OF LAKE VIEW ADDITION BLK A 26-12-20, SUID #1026859.

C.     The United States' holds valid federal tax liens against all property and rights to property of Birdsong, including, but not limited to, Birdsong's interest in the Subject Properties.

D.     The United States' is entitled to foreclose the federal tax liens against the Subject Properties. An order of foreclosure and judicial sale shall follow.

E.     Pursuant to 26 U.S.C. § 6323(b)(6) and the stipulations among the United States, Missoula County, and ENOCH Investments, LLC (Doc. 10; Doc. 26), any outstanding principal balance on tax liens held by ENOCH Investments,

LLC as the assignee of Missoula County has priority over the United States' federal tax liens.

IT IS FURTHER ORDERED that the United States shall file a proposed order of foreclosure and judicial sale by December 18, 2018.

DATED this 4th day of December, 2018.

/s/ Donald W. Molloy     15:01 P.M.
Donald W. Molloy, District Judge
United States District Court